THE LAW OFFICES OF ALLEN A. KOLBER, P.C.
Allen A. Kolber, Esq.
134 Route 59, Suite A
Suffern, New York 10901
(845) 918-1277
email: akolber@kolberlegal.com,

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In re:

    Syed Naqvi,

        Debtor.

Chapter 13

Case No. 25-22527 (dsj)

_____

# DEBTOR'S OPPOSITION TO EILEEN GANNON'S MOTION FOR TERMINATION OF THE AUTOMATIC STAY AND REQUESTING AN EXTENSION OF DEADLINE TO OBJECT TO DISCHARGEABILITY OF DEBT

The Debtor, Syed Naqvi (the "Debtor") by his attorneys, the Law Office of Allen A. Kolber, P.C., in opposition to the motion of Eileen Gannon ("Gannon") to terminate the automatic stay and extend the deadline to object to dischargeability of debt (the "Motion") respectfully sets forth the following :

## BACKGROUND

1. On June 13, 2025, the Debtor filed a bankruptcy under chapter 13 of the U.S. Bankruptcy Code (11 U.S.C. §§ 101 *et seq*.) the "Bankruptcy Code")).

2. The Debtor is an individual and the owner of the property at 54 Eagle Valley Road, Sloatsburg, New York (the "Property").

3. After engaging a government authorized surveyor, the Debtor obtained a land survey which he filed with the Town of Sloatsburg, New York, and commenced certain work at the Property including tree work through a third-party contractor in a previously-unfenced area

of the Property. Approximately one year after the work was completed, Gannon obtained her own survey, which apparently indicated that several of the trees that had been removed were, according to her survey, on Gannon's property. Gannon then commenced a lawsuit in state court to recover damages for the contractor's mistaken felling of these trees.

4. While the Property itself is valued at approximately $230,000 (Petition, Sch. A, ECF 1), Gannon's demand for treble damages for the "willful and wanton" removal of several trees is $415,800 (*see* Mot. Ex. D, "Wherefore" Cl.). Thus, the claim for damages is 180% of the value of improved real property itself.

5. Gannon filed the instant Motion on September 15, 2025 (Doc. #23) seeking the termination of the automatic stay pursuant to section 362(d)(1)(2) of the Bankruptcy Code and to extend her time to object to the dischargeability of her claim under section 523 of the Bankruptcy Code.

6. The Debtor now opposes the Motion for its failure to establish cause both to terminate the automatic stay and to extend the deadline to object to dischargeability.

## ARGUMENT

### I. Legal Standard

7. The Bankruptcy Court's automatic stay provisions, set forth in section 362 of the Bankruptcy Code, "protect[ ] bankruptcy estates by restraining any formal or informal action or legal proceeding that might dissipate estate assets or interfere with the trustee's orderly administration of the estate." *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 206 (2d Cir. 2014). The automatic stay is "one of the fundamental debtor protections provided by the

bankruptcy laws, designed to relieve the financial pressures that drove debtors into bankruptcy."
*Eastern Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998).

8. Courts in the Second Circuit look to what are known as the *Sonnax* factors to determine whether cause exists to lift the automatic stay under section 362(d)(1) of the Bankruptcy Code; these factors are:

**"(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case;** (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties**; (7) whether litigation in another forum would prejudice the interests of other creditors;** (8) whether the judgment claim arising from the other action is subject to equitable subordination; **(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor**; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and **(12) impact of the stay on the parties and the balance of harms."  (emphasis added)**

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990).  The Court need not apply equal weight to each of the factors. *In re Ditech Holding Corp.*, 2022 WL 16952443, at *13 (Bankr. S.D.N.Y. 2022).

## II.   Gannon Has Failed to Meet Her Burden

9. Gannon has failed to meet her initial burden to establish cause to lift the automatic stay.  A party seeking relief from the stay under section 362(d)(1) "must initially produce evidence establishing 'cause' for the relief he requests." *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994). "If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Sonnax*, 907 F.2d at 1285.

10. As an evidentiary matter, the Motion does not offer any evidence to establish any of Movant's claims entitling her to the relief she seeks. For example, the Motion makes several unfounded claims: (i) the Debtor (through his agents or employees) removed 17 of Gannon's trees; (ii) the removal was performed without Gannon's consent and over her protests; and (iii) the removal was a willful and wanton trespass. *See* Motion ¶ 11. These claims, however, are supported only by references to the self-serving allegations in Gannon's state-court complaint.

11. Allegations made in pleadings are not themselves evidence but rather unproven contentions. *See e.g., Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (holding that summary proceedings under Rule 56(e) be supported by the kinds of evidentiary materials listed in Rule 56(c), "except the mere pleadings themselves."). These state court pleadings cannot establish the basis for the relief sought in the Motion.

12. Aside from the Motion's evidentiary deficiency, the only arguments the Motion attempts to muster in applying the *Sonnax* factors to support a finding of "cause" under section 362(d)(1) are that: (i) "[t]here are no counterclaims in the State Court Action, and therefore the automatic stay is not implicated from that perspective" (Memo. p. 1) and (ii) "[t]here is precedent for lifting the automatic stay to permit the State Court action to proceed in the New York State forum." *Id.* This is a wholly insufficient showing.

13. As to the latter point, the Motion cites to *In re: 950 Meat & Grocery Corp* (617 B.R. 224 (Bankr. S.D.N.Y. 2020) ("950 Meat"). However, *950 Meat* is inapposite to the present case because that case dealt with a complex multi-party commercial dispute containing claims against non-debtors and counterclaims, all of which were *not* stayed in the state-court action.

14. In the present case, the state court action was brought by Gannon against the Debtor. Since the Debtor was not directly involved in the wrongdoing alleged in the complaint,

the Debtor initiated a third-party complaint against the company who actually performed the tree work (J&X Tree Service and More, Inc.); but unlike *950 Meat*, the *entire* case here was stayed by the state court upon the filing of this bankruptcy case. *See* Motion ¶ 18. Unlike *950 Meat*, the fact that the entirety of the state court case is stayed weighs in favor of denying stay relief pursuant to *Sonnax* factors 1 and 12.

15. The bankruptcy petition in *950 Meat* was filed on the eve of the state-court trial, which is not true in the present Bankruptcy case, which was filed before a note of issue had been filed in the state court action.

16. Gannon has failed to offer any analysis under *Sonnax* and failed to produce any evidence establishing "cause" for the termination of the automatic stay. Accordingly, the Motion's request to terminate the automatic stay should be denied.

### III. The *Sonnax* Factors Weigh Against Stay Relief

17. The Motion should be denied based on its failure to make a *prima facie* case that there is cause to terminate the bankruptcy stay. *See In re Garcia*, 584 B.R. 483, 488 (Bankr. S.D.N.Y. 2018) ("If a movant fails to demonstrate its *prima facie* case, the court must deny the request to lift the stay"). Nevertheless, analysis under *Sonnax* would not have entitled Gannon to relief under section 362.

18. While section 362 does permit certain claims to return to state court for adjudication during a bankruptcy proceeding, it would defeat the intent of judicial efficiency to bring all interested parties under one proverbial roof if every unsecured claim was permitted to avoid automatic stay protection.

19. Here, Gannon has not objected to dischargeability of her claim. At best, she holds a dischargeable, general unsecured claim. To the extent her claim is allowed, she would be entitled to a *pro-rata* dividend under a confirmed chapter 13 plan just as every other holder of allowed unsecured claims would be. While Gannon intimates that she will make a future determination as to whether to object to the dischargeability of her claim, this determination is clearly one for the Bankruptcy Court to decide and thus another factor weighing against granting stay relief since the state court cannot determine the dischargeability of her claim under Bankruptcy Code section 523. Thus, *Sonnax* factors 1, 2, 7 and 12 all weigh *against* granting stay relief.

20. Further, as lifting the automatic stay would require the Debtor to manage both the pending bankruptcy and the state court litigation, the redundant litigation would further implicate *Sonnax* factors 10 and 12 and weigh further against granting stay relief.

21. Terminating the automatic stay would do little more than to create duplicative and burdensome costs to the Debtor who filed this case in part as a result of the costly litigation commenced by Gannon, over the Debtor's indirect removal of trees caused by a third party on land whose border is disputed by 2 surveys.

22. The Motion claims that the "State Court Action has to be resolved in order to be able to continue here in the bankruptcy forum." Motion ¶ 20. This conclusory statement holds no water. Lifting the stay would actually *reduce* judicial economy and create a separate and distinct litigation in a different forum pertaining to a debt that is not even claimed to be non-dischargeable.

23. Finally, while the bankruptcy in the case cited by Gannon—*950 Meat*—was filed on the eve of trial, here the parties in the state court case were engaging in discovery and the note of

issue had not yet been filed. It is therefore unclear when the state-court case would ever be scheduled for trial. This again weighs against stay relief pursuant to *Sonnax* factors 10 and 11.

24. The instant Motion fails to make an initial showing of cause to terminate the automatic stay. Further, an analysis of the relevant *Sonnax* factors collectively weigh *against* termination of the stay. The Court should therefore deny Gannon's Motion to terminate the automatic stay.

### IV. Request to Extend Time to Object to Dischargeability Should be Denied

25. The Motion also seeks an extension of time to object to dischargeability under Bankruptcy Code section 523. Pursuant to Bankruptcy Rule 4007, "the court may, after notice and a hearing and for cause, extend the time to file [a complaint under §523]." Fed. R. Bankr. P. 4007(c); *see also* 4007(d). While "cause" is not defined, courts in this district have applied the factors elucidated in *In re Nowinski* to determine whether cause exists to extend the time to object to the dischargeability of a claim*:* (1) whether the creditor has received sufficient notice of the deadline and the information to file an objection; (2) the complexity of the case; (3) whether the creditor has exercised diligence; (4) whether the debtor has refused in bad faith to cooperate with the creditor; and (5) the possibility that proceedings pending in another forum will result in collateral estoppel of the relevant issues. *In re Nowinski*, 291 B.R. 302, 303 (Bankr. S.D.N.Y. 2003) (J. Bernstein).

26. While *Nowinski* dealt with the *denial* of discharge under Bankruptcy Rule 4004, courts have applied the same "cause" standard to cases dealing with dischargeability under section 523 and Bankruptcy Rule 4007. *See, e.g. In re Gotay,* 2005 Bankr. LEXIS 3479, at *2 (Bankr. S.D.N.Y. 2005) (J. Gropper).

27. Here, Gannon failed to establish that cause exists to extend the time to object to discharge. The Motion makes no showing that (1) notice of the bankruptcy was insufficient; (2) that the case is unusually complex; (3) that *any* amount of diligence was exercised by Gannon to determine whether a dischargeability claim was warranted; (4) that the Debtor has failed to cooperate with Gannon in any way; or (5) that there is a risk of a collateral estoppel effect from proceedings in another forum.

28. Rather, the Motion actually claims that it is premature for Gannon to make a non-dischargeability claim because the state court litigation must first be resolved "in order to know the extent of Ms. Gannon's claim against the Debtor." Memo p. 11. This circular logic neglects the fact that Gannon is the one individual who already knows the extent of *her* claim against the Debtor. Litigating Gannon's claim to disposition in state court would not in itself inform Gannon whether her alleged claim against the Debtor is nondischargeable. By this logic, a dischargeability determination could *never* be made by the Bankruptcy Court unless the underlying claim had been fully litigated to disposition in a trial court. In reality, this Court is perfectly capable of making a determination under section 523 without the complete resolution of a state court case.

29. Gannon's unsupported claim that the Debtor's action was "willful and wanton trespass" is insufficient on its own to establish the non-dischargeability of her claim, but also makes no sense. The Motion fails to explain, allege or even impute what individual conduct of the Debtor was "willful or wanton" in directing the tree removal defendant to follow a survey that was filed with the Town. Indeed, there is no specific claim at all that the Debtor's action in employing a tree contractor to remove several trees contained any indicia of either willfulness or wanton conduct.

30. While the Motion cites to a 2005 Massachusetts case (*In re: Brink*, 333 B.R. 560 (Bankr. D. Mass. 2005)) for the proposition that trespassing and cutting down trees while doing so can be nondischargeable under section 523(a)(6), it neglects to mention that in that case (*Brink*): (1) a jury had determined that the defendant had "willfully" cut down the plaintiff's trees; and (2) the trespass was done *by* the Debtor with knowledge that the Plaintiff did not want them cut down. Neither fact scenario applies to the instant case. In the present case, even by Gannon's claims, the alleged wrongful felling of her trees was done by an agent of the Debtor *and there is no claim that it was done intentionally. The Motion does not claim or argue that the Debtor took any willful or malicious act against Gannon.* There is therefore no showing of the existence of any factor that could lead to a determination that the claim is nondischargeable.

31. The Motion thus fails to establish cause to extend the time during which Gannon may object to the dischargeability of its claim against the Debtor and the requested relief should be denied.

WHEREFORE it is respectfully requested that the Motion to terminate the automatic stay and to extend the time to object to the dischargeability of Eileen Gannon's claim be denied.

Dated: Suffern, NY
December 30, 2025

    The Law Offices of Allen A. Kolber, P.C.

    By: /s/ Allen Kolber
        Allen A. Kolber, Esq.
        134 Route 59, Suite A
        Suffern, New York 10901
        (845) 918-1277
        *Counsel to the Debtor, Syed Naqvi*